CV 13 6138

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

BLOCK, J.

JEAN RODRIGUEZ,

                                        Plaintiff,

            -against-

THE CITY OF NEW YORK; NEW YORK CITY POLICE
DEPARTMENT (NYPD); and DR. CECILE IRVINE,
Psychologist, NYPD Psychological Services Unit; individually
and in her official capacity as an employee of the CITY,

                                        Defendants.

-------------------------------------------------------------------------X

**COMPLAINT
WITH JURY
DEMAND**

            The plaintiff JEAN RODRIGUEZ, by his attorneys AVALLONE & BELLISTRI, LLP, as

and for his complaint against defendants' THE CITY OF NEW YORK; NEW YORK CITY

POLICE DEPARTMENT (NYPD); and DR. CECILE IRVINE, Psychologist, NYPD

Psychological Services Unit; individually and in her official capacity as an employee of the

CITY, respectfully set forth and allege that:

### INTRODUCTION

            1.        This is an action for equitable relief and money damages on behalf of plaintiff JEAN

RODRIGUEZ, (hereinafter referred to as "plaintiff") who was, and who is prospectively deprived of

his statutory and constitutional rights as a result of the defendants' policies and practices of

discrimination based upon perceived disabilities in the conditions of his employment. Said policy

was implemented under color of law.

### JURISDICTION AND VENUE

            2.        The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and

2202 to secure protection of and to redress deprivation of rights secured by:

        (a)     Title I of the Americans with Disabilities Act of 1990, which prohibits covered employers from discriminating against an employee who is a "qualified individual with a disability;"

        (b)     The Rehabilitation Act, which prohibits covered employers from discriminating against an employee who is a "qualified individual with a disability;"

        (c)     The Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law;

3.     The unlawful employment practices, violations of plaintiff's civil rights and tortious acts complained of herein were committed within the Eastern District of New York.

4.     The pendent jurisdiction of the federal district court is invoked with respect to the plaintiff's claims under New York State Executive Law § 296; and New York City Administrative Code § 8-502, pursuant to 28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PLAINTIFF

5.     Plaintiff is a male citizen of the United States of America and is over twenty-one (21) years of age, a resident of Kings County and the State of New York and is an employee of defendant THE CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the POLICE DEPARTMENT CITY OF NEW YORK (hereinafter referred to as the "NYPD"). For the purposes of this litigation, NYPD may be used interchangeably with defendant CITY to identify the employer which is defendant CITY.

## DEFENDANTS

6.     Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times was plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the Eastern District of New York.

7.     Defendant CITY is an employer as defined in the ADA, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

8.     THE CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT (NYPD); DR. CECILE IRVINE, Psychologist, NYPD Psychological Services Unit; individually and in her official capacity as an employee of the CITY.

## PROCEDURAL REQUIREMENTS

9.     Plaintiff has filed suit with this Court within the applicable statute of limitations period.

10.     Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

11.     On or about March 19, 2013, plaintiff filed a Complaint of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights.

12.     On or about August 15, 2013, the EEOC issued a final determination stating that the EEOC has determined that there is **reasonable cause** to believe the CITY has discriminated against Plaintiff.

13.     On or about August 17, 2013 plaintiff received the EEOC's final determination which stated that Plaintiff had a right to sue the CITY within ninety (90) days of receipt of such

determination. A copy of the Final Determination is attached as Exhibit "A".

## BACKGROUND

14.     On or about January 20, 2004, plaintiff was appointed to the Police Department City of New York (hereinafter referred to as the "NYPD") as a police officer.

15.     As a member of the NYPD, Plaintiff's job performance has been exemplary and Plaintiff was never disciplined by the NYPD.

16.     In 2004, Plaintiff and his wife, were experiencing marital issues and Plaintiff's wife made a baseless complaint to the Internal Affairs Bureau of the NYPD (IAB"). Subsequently, in 2006, Plaintiff and his wife divorced.

17.     In 2008, Plaintiff's co-workers in the 78th Precinct began to tell Plaintiff that his NYPD supervisor made negative comments regarding his divorce and his ex-wife's prior complaint to IAB. As a result, Plaintiff contacted the NYPD's EEO, who instructed Plaintiff to disregard his co-workers' comments.

18.     In or around, 2008, Plaintiff talked to Matt Gallagher, the 78th Precinct's PBA representative, regarding rumors that Plaintiff's status was going to be modified. Mr. Gallagher instructed Plaintiff to disregard the rumors.

19.     Throughout 2009, Plaintiff continued to hear rumors in the precinct that Plaintiff's NYPD supervisor was making derogatory comments regarding Plaintiff, Plaintiff's previous domestic situation, and that his NYPD supervisor wanted to modify Plaintiff's status. Plaintiff once again spoke to the NYPD EEO, who told Plaintiff that he should file a written complaint, which Plaintiff did in September 2009.

20.     In or around January 2010, Plaintiff received a notification to report to the NYPD Medical Division. At NYPD Medical Division, Plaintiff saw Dr. Cecile Irvine, a psychologist, who

told Plaintiff that she had received Plaintiff's EEO Complaint and that the Department believed Plaintiff's complaints were "baseless" and that Plaintiff was "delusional." Dr. Irvine placed Plaintiff on Restricted Duty for "Delusional Disorder," Plaintiff's firearms were taken by the Department and Plaintiff was placed on desk duty answering telephones and taking reports. Additionally, Dr. Irvine advised Plaintiff to see an independent psychiatrist to obtain a letter stating that Plaintiff was not in fact suffering from this alleged "disorder."

21.    At the request of Dr. Irvine, between the months of May and September 2010, Plaintiff saw Dr. Michael Berzofsky approximately four or five times. Dr. Berzofsky wrote a letter to the NYPD Medical Division, stating that after seeing Plaintiff on multiple occasions he determined that Plaintiff was not suffering from the alleged disorder. In October 2010, Plaintiff hand delivered this letter to Dr. Irvine, who informed Plaintiff that she would review it and get back to Plaintiff.

22.    In or around December 2010, Plaintiff returned to Dr. Irvine who told Plaintiff that Dr. Berzofsky's letter did not help Plaintiff's cause. As such, Plaintiff continued to work on Restricted Duty.

23.    In or around May 2011, Plaintiff received notification to report to an Article II Board to be placed on disability because of Plaintiff's restricted status since January 2010.  Plaintiff was informed that he should get yet another independent opinion that Plaintiff was not suffering the alleged disorder.

24.    In or around August 2011, Plaintiff went to see Dr. Max Heinrich, a Psychologist, who Plaintiff continued to see once a week until April 2012. In or around, December 2011, Dr. Henrich wrote a letter on Plaintiff's behalf stating that Plaintiff did not suffer from a disability. This letter was given to the Article II Board who told Plaintiff in February 2012 that Plaintiff needed to see a psychiatrist and not a psychologist.

5

25.    In or around June 2012, Plaintiff saw Dr. Louis Belzie, a psychiatrist, for a total of four (4) sessions. On July 11, 2012, Dr. Belzie wrote a psychiatric report stating that although Plaintiff did suffer from some issues in the past during and following his divorce, relating to his ex-wife, Plaintiff was now fit for full duty. This letter was given to the Article II Board.

26.    In or around January 2013, Plaintiff received a decision from the Article II Board, dated July 27, 2012, stating the following:

> Based on the review of the history, the medical records, the new medical evidence submitted, the clinical findings, the symptomology and today's examination, the Article II medical Board reaffirms its previous decision and recommends approval of the Police Commissioner's application for Ordinary Disability Retirement. The final diagnosis is Delusional Disorder Persecutory Type.

27.    On or about August 15, 2013, the EEOC issued a final determination stating the following:

> "Respondent's [Defendants] asserted defense does not withstand scrutiny and the Commission has determined that there is **reasonable cause** to believe that Respondent has discriminated against Charging Party on account of his disability."

28.    It is factually apparent that Defendants perceived Plaintiff as disabled even though he did not suffer from any discernible disability that would qualify him as disabled under Federal, State, and City law.

29.    As a result of the NYPD's false perception and misdiagnosis of "Delusional Disorder Persecutory Type," Plaintiff has suffered extreme physical, emotional and mental damages. Furthermore, Plaintiff have suffered economic loss, and will continue to suffer economic loss as a result of their discriminatory treatment.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### PERCEPTION OF DISABILITY DISCRIMINATION
### IN VIOLATION OF TITLE I OF THE AMERICANS
### WITH DISABILITIES ACT OF 1990

30.     Plaintiff re-alleges paragraphs 1 through 29 and incorporates them by reference as paragraphs 1 through 29 of Count I of this Complaint.

31.     At all relevant times, plaintiff was perceived to have a disability within the meaning of 42 U.S.C. §12102.  More particularly, plaintiff was perceived to be an individual with mental impairments that substantially limited one or more of his major life activities, which would have precluded his ability to pursue a career in law enforcement with defendant CITY.

32.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT (NYPD) through its agent DR. CECILE IRVINE, Psychologist, NYPD Psychological Services Unit, individually and in her official capacity as an employee of the CITY, failed to treat plaintiff in a manner comparable to other similarly situated perceived disabled individuals, and this constitutes discrimination against plaintiff with respect to the terms, conditions, or privileges of employment.

### COUNT II
### PERCEPTION OF DISABILITY DISCRIMINATION IN
### VIOLATION OF THE REHABILITATION ACT

33.     Plaintiff re-alleges paragraphs 1 through 32 and incorporates them by reference as paragraphs 1 through 32 of Count II of this Complaint.

34.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT (NYPD) through its agent through its agent DR. CECILE IRVINE, Psychologist, NYPD Psychological Services Unit, individually and in her official capacity as an employee of the CITY, discriminated against the Plaintiff because of his perceived

status of being disabled.

35.    Defendants intentionally acted in an outrageous and systematic pattern of perception of disability discrimination, oppression, and bad faith directed at Plaintiff in order to deprive him of his property interest in his employment.

36.    As a result of the acts of the Defendants under color of law, Plaintiff suffered emotional distress, monetary damage, loss of salary and related benefits including pension rights, and incurred expenses for pursuing the claims herein.

## COUNT III
## PERCEPTION OF DISABILITY DISCRIMINATION IN
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

37.    Plaintiff re-alleges paragraphs 1 through 36 and incorporates them by reference as paragraphs 1 through 36 of Count III of this Complaint.

38.    Plaintiff allege that Defendants' THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT (NYPD) through its agent through its agent DR. CECILE IRVINE, Psychologist, NYPD Psychological Services Unit, individually and in her official capacity as an employee of the CITY, under color of law deprived Plaintiff his constitutional rights including the rights to enjoy freedom of speech, movement, association and assembly, to be free from deprivation of life, liberty, and property, and this was done without due process of law, all in violation of the constitution, the law of the United States, and in violation of 42 U.S.C. § 1983.

39.    Defendants intentionally acted in an outrageous and systematic pattern of perception of disability discrimination, oppression, and bad faith directed at Plaintiff in order to deprive him of his property interest in his employment.

40.    As a result of the acts of the Defendants under color of law, Plaintiff suffered

emotional distress, monetary damage, loss of salary and related benefits including pension rights, and incurred expenses for pursuing the claims herein.

## COUNT IV
### PERCEPTION DISABILITY DISCRIMINATION IN VIOLATION OF NEW YORK STATE EXECUTVIE LAW § 296

41.     Plaintiff re-alleges paragraphs 1 through 40 and incorporates them by reference as paragraphs 1 through 40 of Count IV of this Complaint.

42.     New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of perceived disability.  New York State Executive Law § 296 is interpreted to provide greater protection to a Plaintiff than is provided under the federal law.

## COUNT V
### PERCEPTION OF DISABILITY DISCRIMINATION IN VIOLATION OF NEW YORK CITY ADMINSTRATIVE CODE § 8-502

43.     Plaintiff re-alleges paragraphs 1 through 42 and incorporates them by reference as paragraphs 1 through 42 of Count V of this Complaint.

44.     New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of perceived disability.  The same legal standards that apply to ADA claims apply to claims brought under New York City Administrative Code § 8-502.

## JURY TRIAL

45.     Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**Wherefore,** plaintiff demands compensatory and punitive damages from these

defendants' jointly and severally, in an amount to be determined at trial, plus any and all

available statutory remedies, both legal and equitable, and interests and costs.

Dated:        Lake Success, N.Y.
              November 4, 2013

                              Respectfully submitted,

                    By: _____
                              Rocco G. Avallone
                              AVALLONE & BELLISTRI, LLP
                              Attorneys for Plaintiff
                              3000 Marcus Avenue, Suite 3E07
                              Lake Success, NY 11042
                              516-986-2500

Exhibit "A"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA 02203-0506
Toll Free Number:  (866) 408-8075
Boston Direct Dial:  (617) 565-4805
Boston Direct Line:

Internet: www.eeoc.gov
(617) 565-3200
Email: info@eeoc.gov
TTY:  (617) 565-3204
FAX:  (617) 565-3196

Jean Rodriguez                                    (Charging Party)
c/o Avallone & Bellistri
3000 Marcus Avenue, Suite 3E07
Lake Succecss, NY  11042
Attn.  Christopher Bellistri, Esq.

v.

New York Police Department                        (Respondent)
Legal Bureau
One Police Plaza, Room 1406
New York, NY  10038
Attn.  Lesa Moore, Esq.

Re:    Rodriguez v. New York Police Department
       EEOC Charge No.  520-2013-01497

## FINAL DETERMINATION

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under the Americans with Disabilities Act of 1990, as amended (ADA).  Respondent is an employer within the meaning of ADA.  All requirements for coverage have been met.

Charging Party alleged he was subjected to harassment, a hostile work environment and retaliation by the Respondent due to a perceived disability in violation of the ADA.

Respondent denies discriminating against Charging Party.  In its position statement, Respondent asserts that Charging Party "was placed on no firearms status on January 29, 2010...restricted duty on February 1, 2010" and that "an application for disability retirement" was submitted on his behalf because Charging Party "cannot resume full duty status after one year on limited duty."

The Commission's investigation reveals that Charging Party was hired by the Respondent in 2004 as a police officer.  There is no dispute that under the ADA, an employee is not entitled to a reasonable job accommodation if the disability is perceived.  However, the ADA makes it clear

that an employer is required to accommodate an employee with a covered disability if the employer has knowledge or should have knowledge that an employee has a disability and the disability interferes with his [or her] ability to perform his [or her] job duties. The evidence showed that Respondent placed Charging Party on a disability retirement because Charging Party was unable to return to his position as a police officer, despite the fact that he is able to work and was on restricted duty. While there is insufficient evidence to show that Charging Party was subjected to harassment, a hostile work environment and retaliation due to a perceived disability. Respondent did not provide Charging Party with an effective reasonable job accommodation for his actual disability as required under the ADA but placed him on a disability retirement. Thus, Respondent believe Charging Party was substantially limited in his ability to work, which is not true.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party on account of his disability.

This determination is final. The ADA requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. Please contact Equal Opportunity Investigator Anthony Pino at 617-565-3210 within ten (10) days to indicate your wiliness to engage in conciliation discussions.

Charging Party may only pursue the issues/bases dismissed at this time by filing suit against Respondent within 90 days of receipt of this Determination.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with the ADA and the Commission's Procedural Regulations. The confidentiality provisions of Section 107 of the ADA and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

Kenneth An, JD
Acting Director

AUG 1 5 2013
Date