UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
JEAN RODRIGUEZ,

        Plaintiff,

   -against-

THE CITY OF NEW YORK,

        Defendant.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
13-CV-6138 (FB)

*Appearances:*
*For the Plaintiff:*
CHRISTOPHER F. BELLISTRI, ESQ.
Avallone & Bellistri, LLP
3000 Marcus Avenue, Suite 3E07
Lake Success, NY 11042

*For the Defendant:*
SARAH B. EVANS, ESQ.
New York City Law Department
Office of Corporation Counsel
100 Church Street, Room 2-173
New York, NY 10007

**BLOCK, Senior District Judge:**

      Plaintiff Jean Rodriguez ("Rodriguez") brings this action against the City of New York (the "City"), alleging discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), New York State Executive Law ("NYSHRL") § 296, and New York City Administrative Code ("NYCHRL") § 8-107.[1] Rodriguez alleges that the City unlawfully discriminated against him on the basis of a perceived disability. The City moves to dismiss Rodriguez's complaint pursuant to Rule 12(b)(6). For the reasons that follow, the City's motion is denied.

---

[1] In the complaint, Rodriguez purports to seek relief pursuant to NYCHRL § 8-502. However, it is clear that he intended to bring his claim under § 8-107.

## I.

The following facts are taken from the complaint.[2] Rodriguez became a police officer in the New York City Police Department ("NYPD") on January 20, 2004. During his tenure with the NYPD, Rodriguez maintained an exemplary job performance record and was never disciplined. In 2008 and 2009, Rodriguez heard rumors that his supervisor made derogatory comments about his marital situation and wanted to modify his employment status. Rodriguez filed a complaint regarding these rumors with the NYPD EEO in September 2009.

In January 2010, Rodriguez was told to report to the NYPD Medical Division. At the NYPD Medical Division, Rodriguez met with Dr. Cecile Irvine, a psychologist. Dr. Irvine told Rodriguez that the NYPD believed his EEO Complaint was "baseless" and that he was "delusional." Comp. ¶ 20. Dr. Irvine placed Rodriguez on Restricted Duty for "Delusional Disorder." *Id.* Dr. Irvine's conclusion was allegedly based on a "false perception and misdiagnosis." Comp. ¶ 29.

Dr. Irvine advised Rodriguez to obtain a second opinion from an independent psychiatrist. On this advice, Rodriguez met with Dr. Michael Berzofsky between May

---

[2] The complaint is deemed amended to incorporate all allegations of fact made in Rodriguez's memorandum of law in opposition to the City's motion to dismiss. *See* FED. R. CIV. P. 15(a)(2); *see also Chemical Bank v. Bright Star Holding, Inc.*, No. 89-CV-0609, 1995 WL 447792, at *4 (S.D.N.Y. June 8, 1995) ("In order to avoid the academic exercise of requiring [Plaintiff] to amend its complaint to allege the assertion made in its memorandum, we will deem the complaint amended so to allege.").

and September 2010. Dr. Berzofsky wrote a letter to the NYPD Medical Division in which he opined that Rodriguez did not suffer from "Delusional Disorder." However, Dr. Irvine told Rodriguez that the letter was unavailing.

In May 2011, the NYPD instructed Rodriguez to report to the Police Pension Fund Article II Medical Review Board ("Article II Board") to determine whether he should be placed on Ordinary Disability Retirement. The Article II Board also advised Rodriguez to seek an independent opinion regarding his mental health status. From August 2011 to April 2012, Rodriguez met with Dr. Max Heinrich, a psychologist. Dr. Heinrich wrote a letter to the Article II Board in which he stated that Rodriguez was not disabled. However, the Article II Board told Rodriguez that the letter was insufficient because Dr. Heinrich is not a psychiatrist. In June 2012, Rodriguez met with Dr. Louis Belzie – a psychiatrist – who wrote a report in which he opined that Rodriguez was fit for duty. This report was also given to the Article II Board.

In January 2013, Rodriguez received an Article II Board decision – dated July 27, 2012 – diagnosing Rodriguez with "Delusional Disorder Persecutory Type" and "recommend[ing] approval" of the "Police Commissioner's application for Ordinary Disability Retirement." Comp. ¶ 26. The City's Ordinary Disability Retirement application contained Dr. Irvine's alleged misdiagnosis of Rodriguez. Rodriguez was retired from the NYPD on Ordinary Disability Retirement on August 1, 2014.

**II.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the Court "take[s] the factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor." *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

**A. ADA Claim**

Rodriguez contends that the City discriminated against him on the basis of its false perception that he suffered from "Delusional Disorder." To establish a claim of disability discrimination under the ADA, a claimant must allege that: (1) the defendant is covered by the ADA; (2) he suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) he was qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability or perceived disability. *See Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010).

The City does not dispute that it is covered by the ADA. Rather, the City contends that Rodriguez has not adequately alleged facts to show that: (1) he was perceived as being disabled within the meaning of the ADA; (2) he was qualified to perform the essential duties of a police officer, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of a

perceived disability. The Court will address each argument in turn.

Rodriguez plausibly alleges that the City perceived him as suffering from a disability within the meaning of the ADA. Under the ADA, a "disability" is: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(1). Rodriguez alleges that Dr. Irvine told him that the NYPD believed he was "delusional" and falsely diagnosed him with "Delusional Disorder." Such allegations clearly raise a reasonable inference that the City regarded Rodriguez as having a mental impairment. *See* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action [prohibited by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

Rodriguez also adequately alleges that he was qualified to perform the essential functions of his job. "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Rodriguez alleges that he had an exemplary job performance record and was never disciplined by the NYPD. Rodriguez also alleges that medical sources opined that he was fit for duty and that he did not suffer from "Delusional Disorder." These allegations plausibly establish that Rodriguez was capable of performing his

essential job functions. In any event, dismissal at this early stage on this element would be premature. *See Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004) ("Ultimately, the question whether a task constitutes an essential function depends on the totality of the circumstances."); *see also Abbasi v. Herzfeld & Rubin, P.C.*, No. 94-CV-2809, 1995 WL 303603, at *2 (S.D.N.Y. May 17, 1995) ("The determination of the essential functions of the job is a factual question, resolution of which is inappropriate in the context of a motion to dismiss.").

Finally, Rodriguez sufficiently alleges that he suffered an adverse employment action because of his perceived disability. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Rodriguez alleges that the City forced him into retirement by submitting a false disability retirement application to the Article II Board that contained Dr. Irvine's alleged misdiagnosis of "Delusional Disorder." *See Scotti v. County of Nassau*, No. 02-CV-3685, 2005 WL 3670913, at *5 (E.D.N.Y. Sept. 13, 2005) ("[F]orced retirement constitute[s] an adverse employment action."). Drawing all reasonable inferences in Rodriguez's favor, he has plausibly alleged that the City's "false perception and misdiagnosis" of disability resulted in his forced retirement. Comp. ¶ 29.

**B.     NYSHRL and NYCHRL Claims**

The elements of an ADA claim also apply to claims under the NYSHRL and

NYCHRL. *See Kinneary*, 601 F.3d at 158. "However, the NYSHRL provides broader protection than the ADA, and the NYCHRL is broader still." *Pagan v. Morrisania Neighborhood Family Health Ctr.*, No. 12-CV-9047, 2014 WL 464787, at *6 (S.D.N.Y. Jan. 22, 2014). Accordingly, because Rodriguez has adequately alleged a disability discrimination claim under the ADA, he has also sufficiently plead claims under the NYSHRL and NYCHRL. *See Rodriguez v. Verizon Telecom*, No. 13-CV-6969, 2014 WL 6807834, at *7 (S.D.N.Y. Dec. 3, 2014) ("Plaintiff sufficiently pleads a disability discrimination claim under the more rigorous ADA standard, and thus has also stated claims under the NYSHRL and NYCHRL.").

## III.

For the foregoing reasons, the City's motion to dismiss is denied.

**SO ORDERED.**

/s/ Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 23, 2015